May it please the Court, good morning, and may it please the opposing counsel, I'm Blair Dunn on behalf of the appellants here today. I'd like to first begin by acknowledging to the Court that I face an uphill battle, and I understand that. Essentially what I'm here today to argue is a clarification or perhaps even an extension of the law when it comes to absolute immunity. That's the chore that ultimately we face that's tough, and it's made more tough by the fact that we have a very undeveloped factual record to go from. Because this case was dismissed at such an early stage, and I will acknowledge right up front that I do have some familiarity with claims of little green men being from Roswell, as Judge Baldock is, but I can assure the Court. We won't hold that against you. Well, I appreciate that. Judge Baldock might, but you... He may, in fact. But I do not believe that if you look at the record, as underdeveloped as it may be, that we have anything that we presented in a complaint that could have been perhaps beefier that was unplausible. And I believe that ultimately the first thing that we must address is that factual record and the problems that arose because of the by way of a little bit more of discussion of that, the appellants in this matter started out in a dispute with the city clerk Howard, and there were avenues that could have been pursued and clearly were not that would have addressed this and that the city could have undertaken instead of using what was a discovery rule that has never been applied to conduct outside of discovery. But it was kind of a creative lawyering. But I mean, the fact is, a judge agreed with that. Doesn't that put some immunity on that ruling? I mean... By saying that a judge agreed with that, are you talking about... Well, I'm sorry. The restraining order or restraint was issued by a court, right? No, sir. It was not. Who did? Who issued it? The motion was filed. It was never acted upon by the state. Oh, there was no judge order at all? No, not at all. That gets to the point. The case was dismissed before that occurred and before there was an evaluation by the state district court of whether or not that was a proper motion. Our argument is that it in effect had the chilling effect on the point on the appellants in this matter just by the filing of it, by the discussion of you're not allowed to approach the city clerk, that you're not allowed to protest in front of a courthouse when she's entering the courthouse, and it addressed the conduct that the city clerk was uncomfortable with. What if... I'm sorry to interrupt, counsel, but what if there had not... What if you and your client, Ms. Padilla, had not sued and it was the city who had sued for a declaratory judgment and it asked for precisely the same relief? Would you have a valid First Amendment claim for retaliation? Perhaps, but I think that gets to the heart of the issue in this case, which is that there are these processes by which if the city felt that the conduct of Ms. Padilla and her daughter, Vanessa Benavidez, and the members of her campaign staff was such of a harassing nature or intimidating that it made her uncomfortable and it would shake a person of ordinary firmness to feel uncomfortable, they could have gone to the police. The police, which are... Well, no, I know you argue that in your brief, but I'm trying to ask a little bit of a different question. So if they had, instead of going to the police, had filed another action, and perhaps even arguably more aggressive, not just filing a motion for a protective order, but saying, I, the city, am going to sue you and ask for precisely the same relief, would you expect the same conclusion in that case as you're asking the court to adopt in this case? I would, Your Honor. Well, and I'm not trying to trick you or trap you, but you had cited a case called Schiro v. City of Grove, and Judge Baldock was on the panel in that case, and a unanimous panel and a published decision, as I read the case, said that the City of Grove's filing of a declaratory judgment action would not have chilled a person of ordinary firmness, and so they upheld an award of summary judgment for the City of Grove. And so I have trouble distinguishing that case, where the panel, as I understand it, said that there is no, as a matter of law, chilling of a person of ordinary firmness by the filing of a declaratory judgment action, and to say that that is distinguishable in a case where, here, you had sued, and there was not the initiation of a suit, but simply a motion. How can we distinguish the Schiro case? And I think that that gets to our argument that, if you look at the Taylor case, that what we're talking about is, and I do acknowledge that that is what Schiro says, but if you were to look at it and say that the city came out and said, okay, we're going to file a separate action, we're going to abuse the process and engage in a malicious abuse of process, which under New Mexico law has now been equated to malicious prosecution, essentially what we're saying is that the initiation of that action, under New Mexico law, gets to the point of saying that they can abuse the process such that that initiation is a retaliatory prosecution or a vindictive prosecution. Let me ask you this. What are you maintaining is the abuse of process? The motion? The motion itself. In the state court? In the state court. Did you make that argument in the state court? We didn't get the opportunity to. The case was dismissed before. We did respond to the motion, and it is pointed out in the response to the motion for protective order in the state court that we felt that there was absolutely an abuse of process. And we cited two First Amendment concerns in our response to that motion in front of the state court, but it was never heard by that court because the court dismissed the case. Okay. Let me try to pick off, one by one, the defendants that you've got in here, because in your complaint, the city attorney at that time, I believe, Hernandez, I can find nothing in your complaint that alleges any violation of anything as to Hernandez. As a matter of fact, the only thing that you have is where her name was typed in by the two assistants as her being the city attorney. And that doesn't allege any kind of cause of action or claim or anything. And my law partner, arguing this in front of the district court, acknowledged that. She did also bring up in front of the district court that in discussing the parties, she discussed in our complaint the role of the city attorney in supervising those attorneys and her presumed understanding and knowledge of that. Now, I understand that that's not clear, and I'm not trying to argue to this court that it couldn't have been me. But for us, my question is, how do you salvage, even if you can salvage a piecemeal of it, and I'm not saying one way or the other, how do you, the district court dismissed Hernandez out of this case? How do you save it here? I mean, when you haven't even alleged anything. Well, I think that gets to our point that there should have at least been a modicum of discovery, and at which point she may have been properly dismissed as not having any I think whatever happened to notice in making at least some kind of claim that they violated something. And we believe we satisfied that in the portion of our complaint that discusses Well, I wish you'd show that to me in the complaint, because I've read it two or three times now, and I've looked carefully at it. If Your Honor would look at the portion of the complaint that discusses the parties, there is a discussion of She uses the word parties. I understand, Your Honor, but it discusses why she's been made a party. And I'm not arguing that's not a deficient way of pleading. Well But it gets to the point we could have actually gone ahead and made a it could have been dismissed with without prejudice, and we could have come back and supplied the facts to do that. We could have done an inquiry and found more of those records that would have supported that. But I acknowledge that it is deficient. Because in the complaint, in the section of the parties, all it says is defendant Jessica Hernandez is the city attorney for the city of Albuquerque. Perhaps it's in the introduction. I may have misspoken. But then you do go on and say the defendants filed an improper motion for protective order. Correct. And that's plural. And so at the pleading stage, at least, even though it's not a fact-driven complaint, actually, you do make the statement that all the defendants, which would include the city attorney, filed an improper motion. That's correct, Your Honor. And I appreciate that. That is a better clarification than I'd offer. But we've still got the problem of absolute immunity. I mean, you know, I mean, that might very well dismiss all of the attorneys. But and so getting getting to the point of the absolute immunity, that's where the factual inferences become so important in this instance. We're asking the court here today to try to draw a conclusion about where in absolute immunity in the litigation process we're going to draw the box around conduct that is or is not acceptable to qualify for absolute immunity. Our argument is that by using a discovery rule that's and I've searched the case law and to my knowledge, I've never found a case where you could address the conduct that that protective order attempted to to to dissuade people from engaging in in discovery to take and draw the box around that conduct at this point, say that that's still entitled to absolute immunity, I think, is the problem with having a woefully deficient factual record. I think the case should have been allowed to proceed to see whether or not the conduct of the appellants was such that it warranted that, whether or not that that was actually a proper motion or was wasn't a frivolous motion. But those are factual questions that we would have liked to have been able to proceed so that we could present this court with a better factual situation to make the determination about where in the or in the litigation process that absolute immunity applies. Certainly when we get to the the the qualified immunity arguments, we really did need certainly more facts than we were allowed to develop. And some of those facts certainly turned on the judge being reliant upon the affidavit about what the conduct was of Ms. Benavidez and Ms. Padilla rather than allowing that inference to be that perhaps that affidavit, while it was presented in the district court attached to our complaint, may not have been the correct way to characterize that conduct. Let's let there would have been. Let me take you back again before we jump to just the absolute immunity. And because there's lots of case law out there and particularly, how would you explain Butts versus Economy and whether you explain it or not, what is your best case in this in the case law that says the trial court erred in granting absolute immunity to these parties? When I stated up front that I had an uphill battle, I really do acknowledge that the trend in the case law is towards all of this conduct being covered by absolute judicial immunity. My best argument is, is that this isn't the case to decide where that But absolute immunity, the very purpose of absolute immunity is to avoid the defendants having to go through a big fat record. I mean, that is a predicate resolution because we don't want those government officials to have to go through discovery. I agree. But at this stage of with you reviewing this particular set of circumstances, making that decision about where we're in this circuit, going to draw that box, I don't think is appropriate given what we don't have for facts or for factual determination. If the court will allow it, I'd like to reserve the remainder of my time. Sure. Sorry, I need to put that down. I'm not six five and a half. Good morning. I'm Jerry Walsh. I represent the defendants in this matter. First of all, I appreciate Mr. Dunn's candor to the court by stating that they have an uphill battle on absolute immunity. The reason that he has an uphill battle is that the case law is right on point. The defendants were engaged in a judicial function. There can be no question about that. Look at Embler versus Pacman, the Butts case, any case you want to look at. You know, the case law is is pretty, I mean, it's very strong as to the attorneys. It may be a little less strong as to Defendant Howard, the clerk who is claiming immunity, not because she's an attorney, but because she was a witness and not because she was a witness at the trial, but because she gave an affidavit. And not because it was in a criminal case, but was in a civil case. Right. All of those are you may win those, but those are all extensions from slam dunk absolute immunity law. Well, in our brief, we do address the insight to a case authority that absolute immunity should apply to Ms. Howard as well, because she was a testimonial witness. She's a governmental official, even though she's not a lawyer, it's upon her affidavit upon which the motion for protective order was filed and witness absolute immunity has been around for 20 years. But I mean, we do need to and there is a little case law to support you, but it does require an extension from the absolute immunity of a person who appears in court and gives testimony under oath. That clearly is absolute immune. And extending that to an affidavit before court is a little bit of, I mean, I'm not saying it's not appropriate. What I'm saying is it's not quite a slam dunk. Well, Your Honor, I appreciate that concern that you raised. And I would hope that if you do an opinion in this case, that you'll clarify that. And in this particular case, make clear that the actions of Ms. Howard should be covered by absolute immunity based on the fact that she did provide an affidavit and was a testimonial witness. And the other thing that's not exactly a slam dunk is that this is a civil case, not a criminal case. And once again, there is some case law out there extending it to civil cases, but it's not, it wouldn't be fair to say that, oh, gosh, there's just a whole ream of cases out there supporting you. Well, and that's clear, Your Honor, and we cite that in our brief. But the case authority seems to be fairly certain that whenever governmental attorneys are engaged in a judicial function such as these, that absolute immunity will apply. And that only makes sense when we look at, for example, in the U.S. Attorney's Office, for example, civil forfeiture, and they file a pleading. They might not follow a rule that the opposition counsel agrees with. They still would have absolute immunity. And by extension, and that is in a civil setting, we need to make clear, and I think that's why this case has importance, that governmental attorneys involved in a judicial function, you've got to look at the function, as this Court well knows, as the test, that they should be cloaked with absolute immunity. The fact that Mr. Dunn doesn't like the selection of the rule that the defendants proceeded under, Rule 26, that doesn't make any difference. The fact that they were in the judicial function is what makes the difference. Mr. Waltz, let me ask you a follow-up on Judge Abell's question. Let's say we agree with you as far as Ms. Howard's status as a witness. The paragraph of the complaint that Judge Abell had asked Mr. Dunn about, I want to ask you about, and that is in paragraph 16 of the complaint, it says, the defendants, plural, prepared and filed a motion for protective order inconsistent with Rule 26 without justification and cause solely to harass plaintiffs. Ms. Howard was not only a witness, she was a party. Yes. And so are there any cases, or frankly, have you even made any argument that Ms. Howard, as a party, would be entitled to absolute immunity? I'm not aware of any cases that have extended absolute immunity to someone's a party, unrelated to their status as a witness. Well, I think that's correct, Your Honor. But as we point out in the brief, and as Judge Johnson puts out in his opinion, she's a party and a witness. Now, whether you can carve out and say there's a specific case that says because she's a party, that she's entitled to absolute immunity, I don't think we can do that. So you're conceding that on absolute immunity, even if we thoroughly adopt your opinion on absolute immunity, we would have to reverse, at least in small part, to preserve the plaintiff's claim against Ms. Howard as a party? No, I don't think so. Because... Well, then how can we avoid that if she, as a party, is not entitled to absolute immunity? Well, I didn't say that she wasn't. You asked if there was a specific case on her. Well, what's the argument then for extending absolute immunity to someone's status as a party? And does qualified immunity apply to her? Because this isn't just as to her against absolute immunity, but also... Well, that's right. Qualified immunity. And that's, qualified immunity does apply specifically, I believe, to Ms. Howard, as well as all the defendants, as the Court found, using the qualified immunity test. And I don't disagree with that, but you're arguing absolute immunity. And so I just want to know what your argument is. Okay. What's your argument for absolute immunity for someone's status as a party? In Ms. Howard's case, because she was a governmental official, and also a witness, I believe absolute immunity applies, because she was also involved in the judicial function by giving the affidavit. That's my best argument and clearest argument that's why she... You're saying that the affidavit was given not as an attorney, not doing legal work. The affidavit was given as a party. I understand that, Judge Udall, but it was also given in her position as a governmental official, involved in the litigation, not as an attorney, but as part of the judicial... If she wasn't an attorney in the case at all, if she was in a completely different office, but she just simply had factual knowledge about something, and she gave an affidavit in a case as a witness, would she get absolute immunity? Your Honor, if they're a governmental official, and as part of the judicial function and process, I think they get absolute immunity, even though she was with the city clerk's office, but she was defended by the city attorney's office. I think they're interwoven in the... Even if she weren't acting as an attorney at all, and I guess she wasn't here. Well, I don't know if she was or not, but no, she wasn't. No, I don't think... She wasn't acting in an attorney capacity. Yeah, right. She's a city clerk. Yeah. To answer Judge Baldock's question, even if you decide that, and I don't think you should, but even if you decided that Ms. Howard did not have absolute immunity, clearly she had qualified immunity. There was no chilling effect, and I think it's really important, the relief that was asked for, I think that Mr. Dunn may have mischaracterized it just a bit. They weren't trying to prohibit First Amendment speech. It was specifically to avoid threats, harassment, and very specific threatening conduct that had been exhibited towards Ms. Howard. That was it. And the court never even had a chance to rule on the motion for protective order. It was dismissed by the state district court. They took a writ of superintendent control to the state Supreme court, which was denied. As Judge Johnson said, he was perplexed why they didn't go to the court of appeals, but they didn't. So they went up to the state Supreme court. They lost there as well, and then they filed this lawsuit. Now they didn't ask for any stay. They didn't ask for rule 55 or 56 affidavit to develop facts on the qualified immunity argument. If they could have done that, but they didn't. And as Judge Avell stated, these immunity doctrines should be asserted early to avoid the onerous nature of the litigation. These facts will never change. And no matter what kind of discovery they did, they might not like the method or the rule that was proceeded under. But we do know the complaint that they filed. We do know that the motion that was filed by the defendants and what that motion said in the affidavit. And no matter how you look at it, they were involved in a judicial function for which immunity should be granted. The court also, as you know, granted qualified immunity and the alternative. And the DEC action, they did not bring forward. And that's been dismissed as well as the state constitutional claims. Let me take you back to the absolute immunity question in regards to that. And here's what bothers me in the district courts in regards to this. You have a person who is not an attorney, but an affidavit is sought. Now, if nothing ever happens with that affidavit, if it's not made public or anything, there's no harm, no foul. But when a potential witness files an affidavit and it's used in open court as a, it is the basis of whatever relief that the person has asked for, that person, even as an affidavit, is a witness. And what I'm concerned about, and Judge Ebel's right in the application of the absolute immunity as to her, if she does, if we say she doesn't have absolute immunity or she doesn't have qualified immunity, then every affidavit whose affidavit is filed in public, in a court has opened themselves up then to this exact kind of case if, if the appellant is correct. Well, Judge Wallock, that's absolutely correct. And as we know, in pleading and practice in both criminal work and civil work, affidavits are attached all the time to people. Well, what's your best law then that protects her? Because I don't want to go, I don't think this panel wants to go riding on something that, so what's your best case that says that she, as a non-lawyer in this position, is entitled to absolute immunity because I don't know where it exists and what the problems are if it doesn't exist. Well, Your Honor, I, when we look at and examine Judge Johnson's opinion, he states specifically, witnesses enjoy absolute immunity from civil liability under Section 1983 for their testimony in a prior trial, citing Hunt versus Bennett, which is a Tenth Circuit case, citing Briscoe versus Lehue, which is a U.S. Supreme Court case, and he further states, this immunity applies to witnesses who sign an affidavit, as well as to witnesses who present live testimony in the courtroom, citing Todd versus Weltman, Weinberg, and Reese Company. Yeah, but this is not a live witness testimony in a courtroom. No, but he also says that he signed an affidavit as well as, so he's. In what case does he cite? He cites on that one, Todd, I'm sorry, Todd versus Weltman, Weinberg, and Reese Company, Burns versus County of King, absolute immunity for a witness who signed affidavit used in bell revocation hearing, P.J. X. Rail Jensen versus Wagner, that's a Tenth Circuit case, 603, Fed Third, 1182. So Judge Johnson, at page 12 of his opinion, specifically and squarely addresses these absolute immunity issues with respect, Judge, to a witness who signs an affidavit. It's very, very clear on it. Judge Johnson, Chief Judge Johnson spent a considerable amount of time, in my opinion, thoroughly analyzing these issues. So I do believe, based on the case authority that was cited, that absolute immunity also applies to Ms. Howard, and it should. Otherwise, you're going to have all these lawsuits in governmental cases, civil and criminal, FBI agent signs an affidavit. It might not testify. It might get resolved. You could go a hundred different examples. IRS agent does an affidavit. So you have to give some immunity. Now, are those cases, and refresh, because I remember looking at them, and the question that Judge Ebel, this is a civil case, not a criminal case. Those are all civil cases. That's right. And there's case authority that Judge Johnson cites, and we say in our brief, it says, by extension, the courts have held that this is akin to the same function and should be treated as same. And to try to make a differentiation, I do not believe you should do that. I believe it's absolute immunity. I believe Judge Johnson's right, and the case authority cited is correct. And if I can finish up here, there's nothing against Jessica Hernandez. I appreciate the word plural defendants, but at oral argument, we cited in the brief, they even conceded that there were no facts that they have against Jessica Hernandez as specifically cited in our brief, and where it appears in the transcript, but we would ask that this case be brought to an end. Absolute immunity applies. Qualified immunity, if you have any hesitation about Ms. Howard, qualified immunity certainly applies. This case should be over and save the taxpayers the money of further litigation in this matter. I have 40 seconds left. If anybody has any questions. I have one question. Yes, sir. Did Judge Johnson, in the part on pages 11 to 13 out of his order, did he ever address Ms. Howard's entitlement to absolute immunity as a party? I don't think he did. Do you agree? I do agree with that, that he never said specifically that she has absolute immunity as a party, but I'm not sure that she doesn't. And I would ask that you really take a hard look at that because I think she should have absolute immunity as a party as well. Any other questions? Thank you, Judge. Thank you, Judge Baxter. Pleasure. Counsel, let me ask you this because I think it goes back. What is your best case as to a party, which would be in this case, that is not being entitled to qualified immunity? And I appreciate that the court has been able to drill down, and that was exactly what I was going to address at the beginning of this, is that as a party, there isn't anything that indicates that a party is absolutely immune when they're engaged in the litigation process. I understand the arguments about counsel. I understand my uphill battle there. But as to Ms. Howard, that was probably our biggest consternation. And the reason for bringing this before the court was ultimately... But qualified immunity would still be an issue for her. It would, which we address on a factual basis. That's if, if I can finish answering that, I apologize. I thought, no, I apologize. I thought you were done, but I want you to finish. But as to the absolute immunity for her, we're addressing her conduct and litigation as a party, which is akin to the malicious abuse of process, which we discussed at the beginning. That's, that's the point with Howard as it goes to absolute immunity. When it gets to the qualified immunity, what we're looking at is that a clearly established right. Now you've heard the characterization that there is no clearly established right to engage in conduct that's harassing and intimidating. That's true, but that's a factual determination. And that was our argument that just because Ms. Howard said so in her affidavit, which she is entitled to absolute immunity for, does not mean that that's necessarily the fact. And we didn't get to the point where we could look at whether or not the conduct that she engaged in was actually... You don't get to get their counsel. I mean, that's the whole point of qualified immunity. So again, if, how does qualified immunity not apply to her insofar as clearly established law? What's your best case theory? If, if there, so the argument would be that her affidavit that was attached to our complaint was the only evidence that was there. And there's no indication that there, that her conduct was anything that appellate Benavidez's conduct was anything other than harassing. She's not entitled to first amendment protections for her speech, if it's harassing and so on. Our argument was that if you read our complaint, that she did not engage in harassing conduct in her speech and it was a protected right. And the inference from our complaint should have been that that conduct was a clearly established right that she was engaged in, that did, that they were not entitled to infringe upon because there's, or at a minimum, we should have allowed, been allowed to present some sort of evidence to say that that conduct was protected speech and that it was therefore improper for qualified immunity to attach because they should have known that infringing upon that right was. So qualified immunity doesn't apply to Howard at a minimum. That's what we would argue. So I thank the Court for your time. Thank you, counsel. This matter will be submitted. Do appreciate the excellent advocacy of both sides. And in particular, the Court appreciates Mr. Dunn's candor in which you opened your argument. This matter will be submitted and the Court is in recess until 9 o'clock in the morning.